Plaintiff has failed to prove by the greater weight of the evidence that he contracted an occupational disease within the meaning of the Act or that he was disabled as a result. Therefore, I must respectfully dissent from the majority decision in this matter and would affirm the Opinion and Award of the Deputy Commissioner.
Plaintiff first filed a claim for asbestosis but later voluntarily withdrew his claim without prejudice to refile within one year. Subsequently, plaintiff underwent a lung transplant and a biopsy performed on the removed lung revealed evidence of fibrotic lung disease and lipoid pneumonia. Therefore, he refiled his claim on the grounds that he contracted an occupational lung disease namely lipoid pneumonia as a result of exposure to oil mist sprays while employed by defendant. On 1 September 1995, plaintiff died as a result of lung cancer. The greater weight of the expert medical evidence of record provided by Drs. Roggli, Hayes, Greenburg, Tapson and Merchant does not support plaintiff's claim. Moreover, plaintiff's testimony prior to his death does not support his claim.
Pathologist Dr. Vincent Roggli examined paraffin blocks from plaintiff's removed lung on 27 May 1997. He found that plaintiff had idiopathic pulmonary fibrosis and that plaintiff's lipoid pneumonia was superimposed upon the fibrotic lung disease and was not the cause of that lung disease. Dr. Roggli did not test the lipids to determine their nature or possible source. He stated that while it was possible that the presence of lipids could have had some aggravating effect on plaintiff's condition, because plaintiff's condition was a progressive disease regardless of the lipids, and effect was clinically insignificant. Further, the fact that there was no mention of lipid pneumonia in the medical documentation of plaintiff's lung distress in the late 1980s and early 1990s, it was unlikely to be a contributing factor in his lung condition. Finally, if plaintiff had been exposed to oil-based mists in his employment, which ended in 1985, it was unlikely that he would not have developed symptoms until three years after his last exposure.
On 17 November 1988 plaintiff presented to Dr. Allen Hayes with complaints of difficulty breathing which plaintiff stated began in January or February 1988. At that time, he determined that plaintiff did not suffer from asbestosis. Dr. Hayes indicated that if plaintiff had been exposed to toxins as suggested, he would have developed symptoms before 1988. Further, given plaintiff's account of his exposure to oil-based mists, it was unusual that plaintiff experienced shortness of breath suddenly rather than gradually. Because cases of lipoid pneumonia are so rare, Dr. Hayes was unable to state whether plaintiff's job placed him at a greater risk than that of the general public in contracting the disease. Further, he stated that statistically, it was more likely that plaintiff's condition "came out of the clear blue, caused the bad lungs and there is some lipid that happens to be deposited there as well."
Dr. Gary N. Greenburg reviewed plaintiff's medical records and the discovery materials generated in this case. In his research he found no cases where lipoid pneumonia was the result of inhalation, and did not believe that plaintiff's employment with defendant placed him at an increased risk of developing the disease. Further, because there was no information on the nature of the lipids present in plaintiff's lungs, Dr. Greenburg stated that there is no way to definitively state that they were petroleum-based or work-related.
Dr. Victor F. Tapson is the physician who performed plaintiff's lung transplant. He believed that because plaintiff's history, as related by plaintiff, did not include any other possible source of lipids, that plaintiff's condition must have been work-related. Dr. Tapson's opinion is based on an inaccurate history and is outweighed by the other medical evidence of record.
During his testimony at the hearing before the Deputy Commissioner, plaintiff was asked several times both on direct and cross examination to state the specific duties of his employment with defendant. At no time during his testimony did plaintiff state that he ever sprayed any petroleum-based mists in the course of his employment with defendant. He did note that they cleaned brakes and other parts by spraying compressed air and that the process resulted in dust, but he did not claim that he was exposed to any oil mists. Attached to the Form 18B filed on 12 May 1995 in which plaintiff claimed for the first time to have an occupational disease resulting from exposure to oil mists, is a statement by plaintiff regarding his employment history and the various duties he performed. Again, there is no mention of any oil-based spraying in any of plaintiff's jobs. It was not until 10 January 1995 in a letter written by plaintiff but not produced for entry into the evidentiary record until after his death, that plaintiff for the first time claims that he sprayed motor oil on parts every day of his employment with defendant. This letter does not constitute newly discovery evidence and should not be a part of the evidentiary record or, in the event it is considered, it should be afforded little weight.
There is insufficient medical evidence of record to establish the nature of the lipids found in plaintiff's removed lung. Further, there is insufficient evidence to establish that plaintiff inhaled oil-based mists while employed by defendant. Lastly, there is insufficient medical evidence to establish that plaintiff's lipoid pneumonia caused the cancer, which resulted in plaintiff's death, or was a factor in his inability to work after 1988. Therefore, as plaintiff has failed to carry his burden to prove that there is a causal nexus between his death, his lipoid pneumonia and his employment or that his employment placed him at an increased risk of contracting lipoid pneumonia, plaintiff's claim must be denied.
 S/_______________ DIANNE C. SELLERS COMMISSIONER